EX PARTE MORALES, PETICIONARIO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Humacao en pleito sobre declaratoria de herederos.

No. 2669.—Resuelto en julio 11, 1922.

FILIACIÓN—RECONOCIMIENTO EN DOCUMENTO PÚBLICO—ABOGADO Y CLIENTE.—Presentada una demanda de filiación a nombre de varios supuestos hijos naturales alegando que los demandantes eran hijos naturales del demandado y que habían sido reconocidos por éste por actos directos que implicaban la posesión continua del estado de hijos naturales, el demandado admitió en su contestación los hechos así alegados en cuanto a uno de los demandantes. *Se resolvió:* que tal admisión en una actuación judicial, que es uno de los documentos públicos a que se refiere el artículo 131 del Código Civil Español, interpretado liberalmente, constituye, sin más, un reconocimiento voluntario válido que, fallecido el padre natural, pone al hijo en condiciones de pedir y obtener una declaratoria de heredero; y que dicha admisión por el abogado a nombre de su cliente en una de las alegaciones de un pleito, obliga al cliente y es prueba concluyente contra él.

Los hechos están expresados en la opinión.

Abogado del peticionario: Sr. A. Mena.

EL JUEZ ASOCIADO SR. FRANCO SOTO, emitió la opinión del tribunal.

Joaquín Morales Flores solicitó de la Corte de Distrito de Humacao, siendo mayor de edad, que se le declarara único y universal heredero de Eduardo Morales Trigo, alegando que éste falleció sin otorgar testamento y que su pariente más inmediato es el peticionario, quien reclama ser hijo natural reconocido de dicho causante.

La corte inferior, vista la solicitud y la prueba practicada, dictó resolución declarando sin lugar la petición y contra la misma se ha establecido el presente recurso.

Se señalan como errores incurridos por la corte inferior, primero, sostener que la alegación tercera de la petición que dice: "Que el pariente más inmediato del señor Morales Trigo es el peticionario quien es hijo natural reconocido de dicho causante," constituye una conclusión legal; y, segundo, no haber sido debidamente apreciado el resultado de la prueba.

Invertiremos el orden en el examen de los errores y empezaremos por el segundo.

Según la Ley de Procedimientos Legales Especiales, aprobada en marzo 9, 1904, en relación con el artículo 913 del Código Civil Revisado, enmendado en marzo 9, 1911, el peticionario había de justificar, para probar su petición, los siguientes extremos: primero, el fallecimiento del causante; segundo, su relación de parentesco con el peticionario; tercero, que el causante no otorgó testamento; y, cuarto, que dicho peticionario es su único y universal heredero.

El segundo extremo es el único que exige un examen detenido de nuestra parte. Para probar dicho extremo, que podemos llamar cardinal en este caso, o sea, la relación de parentesco del peticionario con el causante, se presentó como prueba documental una certificación de nacimiento de Joaquín de la Cruz Flores, de la que resulta haber nacido en mayo 20 de 1890, como hijo natural de María Flores; los autos del pleito civil No. 1512, archivado en la corte inferior, seguido por María Flores, como representante legal de sus menores hijos Joaquín de la Cruz, María, Eduardo, Francisco y José Cipriano Flores, contra Eduardo Morales Trigo, y dos cartas dirigidas por éste a Joaquín Morales Flores, llamándose en las mismas padre de este último.

El pleito indicado sobre filiación se inició mediante la correspondiente demanda y en la contestación que se presentó a nombre del demandado Eduardo Morales Trigo se admitieron como ciertos los hechos alegados en cuanto a Joaquín de la Cruz Flores y negándose en cuanto a los demás nombrados en dicha demanda. No llegó a dictarse sentencia en el pleito por haber desistido de su acción la demandante.

¿Es suficiente la prueba practicada para declarar heredero abintestato al hijo natural reconocido dentro del procedimiento *ex parte* por él iniciado o está obligado el hijo a entablar previamente un pleito a los efectos de fijar su *status*, como sostiene el tribunal sentenciador?

En el caso de *Puente et al.* v. *Puente et al.,* 16 D. P. R. 582, 586, esta corte dijo:

"Los trámites de la Ley sobre Procedimientos Legales Especiales a que hemos hecho referencia, no son los apropiados para la obtención de una sentencia declarando a una persona hijo natural reconocido de otra. Ha sido la práctica constante que cuando el padre omite o niega el reconocimiento, el hijo debe acudir al tribunal competente ejercitando la acción de filiación para obtener que el tribunal declare en una sentencia lo que omitió o se negó a declarar el padre de una manera solemne. Tal procedimiento es por su naturaleza contencioso y en él son partes además del hijo, el padre o sus herederos y causahabientes.

"Sólo cuando el hijo natural ha sido reconocido voluntaria y solemnemente por el padre o ha obtenido una sentencia reconociéndosele como tal, es que puede acudir a la Ley de Procedimientos Legales Especiales para obtener su declaratoria de herederos en los casos de herencia intestada. Los trámites de dicha ley son breves, sus términos cortos y su propósito es declarar quiénes son todos los herederos de determinada persona que ha muerto sin otorgar testamento, cuando la personalidad de tales herederos se prueba de manera incontrovertible; y si bien es posible que se presenten reclamaciones opuestas, éstas se refieren generalmente al mejor derecho de los reclamantes o a cuestiones meramente de ley."

La prueba practicada demuestra que cuando María Flores inició el pleito contra Eduardo Morales Trigo en solicitud del reconocimiento de sus cinco hijos, ninguno de ellos constaba reconocido en forma auténtica y fehaciente. Pero demuestra también la prueba que cuando el alegado padre se vió demandado, por su propia voluntad admitió en su contestación que Joaquín de la Cruz, el aquí peticionario, fué procreado por el demandado en sus relaciones con la demandante y que lo había reconocido como hijo suyo por actos directos que implicaban la posesión contínua del estado de hijo natural, y la negó en cuanto a los cuatro restantes, y esto nos lleva a decidir cuál pueda ser el valor de los autos del dicho pleito.

Se sostiene por el peticionario que la admisión que hizo el causante en dicho pleito reconociéndole como su hijo natural es un reconocimiento solemne que reune todos los requisitos que exige la ley aplicable al caso. Y preguntamos, ¿cuál sería esa ley aplicable? En este particular esta corte tiene resuelto en constante y repetida jurisprudencia que la filiación y reconocimiento de los hijos naturales deben regularse por la legislación vigente en la época en que nacieran y fueran concebidos, y bajo la cual tuvieran lugar los hechos que se supongan determinantes de su reconocimiento. El peticionario, según se alega, nació el 20 de mayo de 1890 y por este hecho su caso queda bajo la acción del Código Civil Español, el cual dispone en su artículo 131 lo siguiente:

· "El reconocimiento de un hijo natural deberá hacerse en el acta de nacimiento, en testamento o en otro documento público."

La disposición inserta parece clara. El reconocimiento de un hijo natural reviste el carácter de la especialidad y debe ser expreso y justificarse por pruebas taxativas y determinadas. Es el reconocimiento voluntario que la ley misma dice cómo debe hacerse y no es el forzoso para el cual también la ley determina los requisitos que deben llenarse (artículo 135 del mismo código) exigiendo recurrir al medio forzoso de una acción de filiación. Pero no estamos en este caso. Se trata de un reconocimiento voluntario y debemos resolver ahora si los autos presentados como evidencia constituyen la prueba especial y determinada que fija el artículo 131 *supra,* o en otros términos, si los referidos autos pueden calificarse dentro de las palabras "documentos públicos."

"No cabe hablar aquí de ejecutorias puesto que se trata de reconocimientos hechos voluntariamente. Por documentos públicos debemos entender los que como tales se consideran a los efectos de la prueba en el artículo 596 de la Ley de Enjuiciamiento Civil, y, por tanto, entre ellos los que puedan tener aplicación a la materia." Manresa, tomo 1ro., pág. 567, Comentarios al Código Civil Español.

Y en el artículo 596 del Código de Enjuiciamiento Civil Español podemos leer:

"Bajo la denominación de documentos públicos y solemnes se comprenden: * * * 7º. Las ejecutorias y las actuaciones judiciales de toda especie."

En el comentario a este artículo el mismo tratadista dice que la palabra ejecutoria se emplea, no en su acepción de sentencia firme, sino en la de documento público y solemne en que se consigna dicha sentencia; y que en las páginas 497 y siguientes del tomo primero, Comentarios a la Ley de Enjuiciamiento Civil Español, él ha expuesto lo que se entiende por actuaciones judiciales, y las formalidades con que han de estar autorizadas para que sean válidas y eficaces; y en la página y tomo citados se expresa así:

"Las palabras *actuación, diligencia* y *trámite,* especialmente las dos primeras, suelen confundirse en el lenguaje forense, no obstante que cada una de ellas tiene su significación propia y sirve para expresar un acto o cosa diferente dentro de los procedimientos judiciales.

"Por *actuación* se entiende toda providencia, notificación, diligencia o acto de cualquiera especie que se consigna en un procedimiento judicial con autorización de escribano, o del funcionario a quien la ley confiere esta facultad; y de aquí el que se dé el nombre de *actuaciones* al conjunto de todas las partes que constituyen un procedimiento judicial. Según esta definición, concreta a su etimología, la actuación judicial abraza toda gestión hecha en un procedimiento con referencia a las personas que intervienen en el juicio; al paso que la *diligencia* denota un acto que tiene por objeto la ejecución y cumplimiento de un mandato judicial, referente a la cosa misma; y *trámite* significa el orden sucesivo de las actuaciones y diligencias que deben practicarse en la sustanciación de los juicios y de todo expediente.

"Es evidente, pues, y estas definiciones así lo demuestran, que las diligencias son actuaciones; pero no todas las actuaciones son diligencias puesto que también son actuaciones judiciales las providencias, notificaciones, declaraciones y cuanto se consigna en los autos, y forma el conjunto de las partes de que éstos se componen,

inclusos los escritos de los litigantes después de presentados y unidos a los autos  *  *  * .''

Se hace fácil entender que bajo la denominación de escritos de los litigantes se han de comprender las alegaciones de las partes, tales como demandas, contestaciones, mociones, etc., o sea, equivalentes a las nuevas denominaciones que se emplean en la vigente Ley de Enjuiciamiento Civil para designar las mismas actuaciones.

Los artículos 44, 45 y 49 de la Ley de Evidencia en Procedimientos Civiles, aprobada en marzo 9, 1905, dicen:

''Art. 44.—Los documentos son de dos clases: 1, Públicos; y 2, Privados.

''Art. 45.—Son documentos públicos: Los que se determinan en el artículo 1184 del Código Civil.

''Art. 49.—Los documentos públicos se dividen en cuatro clases:

''1. Leyes.

''2. Protocolos judiciales.

''3. Otros documentos oficiales.

''4. Archivos públicos de documentos públicos privados, llevados en Puerto Rico.''

El mismo tratadista Manresa, al comentar el artículo 1216 del Código Civil Español, del cual está tomado literalmente el artículo 1184 citado en la disposición arriba inserta de la Ley de Evidencia, se vuelve a referir al artículo 596 de la Ley de Enjuiciamiento Civil Española, y declara de una manera terminante que las actuaciones judiciales son documentos públicos, esto es, una de las clases de documentos a que se refiere y que define el artículo 131 del Código Civil Español.

''La expresada definición, que indica el aspecto formal externo a que en este punto ha de atenderse, ofrece la necesaria amplitud para que en ella estén comprendidos todos los documentos públicos, y no ofrezca duda que desde luego lo están los que, distinguiendo la fe pública en notarial, gubernativa y judicial, enumera la Ley de Enjuiciamiento en su artículo 596, concordante de éste  *  *  * .''

*          *          *          *          *          *          *

"Por último, ninguna dificultad ni duda ofrece que son documentos públicos, para el código, tanto las partidas o certificaciones de nacimiento, de matrimonio y de defunción, dadas con arreglo a los libros, por los párrocos o por los que tengan a su cargo el registro civil, a cuyos documentos se refiere en otras repetidas ocasiones el código, y también las ejecutorias y las actuaciones judiciales de toda especie, puesto que en ellas hay la autorización dada por los encargados de la fe pública judicial." Manresa, tomo 8, págs. 433 y 434. .

Ha quedado demostrado sin duda alguna que las actuaciones judiciales constituyen un documento público tal como lo exige el repetido artículo 131 del Código Civil Español aplicable al presente caso. Ahora, la única cuestión que quedaría por resolver y que debemos examinar es si una admisión como la que se hizo por el abogado del causante puede producir los mismos efectos legales que si hubiera sido hecha por el mismo causante. Nos inclinamos a la afirmativa.

"Una contestación bajo nuestro estatuto no es una prueba para el demandado, pero una admisión en la contestación de un hecho alegado en la demanda es evidencia conclusiva contra él." Estee's, tomo 2, pág. 567.

"Cuando una parte en una acción hace admisiones solemnes contra su propio interés por medio de una alegación, dichas admisiones serán consideradas como hechos admitidos, y no se le oirá para poner en duda la corrección de los mismos en ningún estado del caso en la corte sentenciadora, o en apelación, cuando han sido debidamente incluídos en una transcripción o en la preparación del caso mientras forman parte de los autos * * *." *Jones on Evidence,* vol. 2, pág. 514.

"Se puede establecer como principio general que no toda admisión de un abogado es evidencia o produce efecto legal contra su cliente. Por ejemplo, las manifestaciones hechas por un abogado fuera de la corte no son admisiones contra su cliente, aún cuando tales manifestaciones tengan relación con la materia en controversia. Pero durante el curso del pleito los abogados se subrogan en la persona de sus clientes y puedan ejecutar los mismos actos que tales clientes puedan ejecutar en persona." *Jones on Evidence,* vol. 2, págs. 455 y 457.

"La regla general es que las admisiones hechas por un abogado

en una acción no son admisibles en otra acción distinta entre las mismas partes. Pero cuando se hace una admisión categórica y sin restricción alguna en una causa pendiente, ya mediante estipulación por escrito del abogado o como cuestión de prueba en la vista, puede ser usada en un juicio. subsiguiente y no puede ser retractada, a menos que sea con permiso de la corte mediante la debida justificación de error, imposición o sorpresa.'' *Jones on Evidence*, vol. 2, págs. 459 y 460.

El principio que hemos enunciado de que las admisiones de un abogado obligan a su cliente en determinadas condiciones, está admitido por nuestras leyes y en parte definido por la jurisprudencia que tiene ya establecida este tribunal.

La ley determinando reglas para el ejercicio de la profesión de abogado en Puerto Rico, aprobada en marzo 8, 1906, dispone en su sección novena lo siguiente:

"'Sección 9.—Todo abogado, en tanto que no se le haya notificado por sus clientes la revocación de su representación, tendrá derecho para obligar al que lo haya elegido como tal en todas las gestiones que judicialmente practique en nombre de dicho cliente y que consten. en las minutas de la corte ante la que tales gestiones se verifiquen, pero no de otra suerte.''

"La presunción de que un abogado está autorizado para representar a una persona, no puede ser negada fácilmente, y sus actos son susceptibles de fácil ratificación. Es un principio en favor de todo el foro. Esta presunción descansa sobre la base del procedimiento de la corte, pues de otro modo a cada paso tendría que detenerse e interrogar a los abogados en cuanto a su representación.'' *Aparicio Hermanos* v. *H. C. Christianson & Co.,* 25 D. P. R. 2.

En consecuencia a todo lo expuesto, diremos que no debemos perder de vista que estamos discurriendo sobre un reconocimiento voluntario y no forzoso. Este último señala también las regulaciones que deben existir para poder poner al hijo natural en condiciones de acudir al medio *a fortiori* de una acción de filiación. Para el reconocimiento voluntario que consideramos en este caso *ex parte* sobre declaratoria de herederos y en donde la ley misma señala las regulaciones

especiales de la prueba para tales casos, no queda otro medio hábil sino admitir la letra de la ley que no por ser antigua en sus preceptos es menos liberal en su alcance, y por tanto, en armonía con el espíritu liberal de interpretación que le hemos dado.   No creemos que estuviéramos autorizados para darle una interpretación restrictiva al artículo 131 citado al referirse que una de las formas del reconocimiento voluntario es la que se hiciera en documento público.   Si nos fuera permitido hacer tal restricción teníamos que concluir ineludible y necesariamente que sólo el reconocimiento voluntario podía verificarse de tres modos: por la partida de bautismo, por testamento o por escritura pública.   De otra manera, ¿en qué documento público, fuera de los señalados, podría admitirse el reconocimiento de acuerdo con el artículo 131?   O reduciendo los términos de la discusión, ¿cuándo podría existir el ejemplo de un reconocimiento voluntario que no fuera hecho sino en escritura pública para que se le calificase de documento público?   No podríamos entonces salir del círculo de la Ley Notarial, y esto no está en armonía con la letra ni con el espíritu del artículo 131 del Código Civil Español, y es porque no fué la intención del legislador emplear las palabras "documentos públicos" en sentido específico o restrictivo, sino en un sentido general o genérico.   Hubiera bastado de otro modo que dicho artículo hubiera usado las palabras "documentos notariales" o "escritura pública".   Pero ha sido lo contrario el alcance que se le ha dado deliberadamente a las palabras "documentos públicos", y en las mismas se han de comprender no solamente los instrumentos que otorga el notario, sino que también han de comprender todo documento auténtico, cuya autenticidad es lo que le da el carácter de público y solemne.

Los medios de prueba de que se ha de valer un litigante en el reconocimiento forzoso son precisamente porque carecen de esa autenticidad que les imprime la fe notarial o la

fe de cualquier otro funcionario o por la ausencia de los requisitos que la ley clasifica de solemnes y auténticos.

Manresa ha señalado esas diferencias así:

"Los autores, fundados en lo que dispone la ley 1ª., tít. 18, Partida 3ª. antes citada, dividen los documentos en *público, auténticos* y *privados.* Se dice *público* el documento cuando ha sido otorgado con las solemnidades correspondientes ante escribano público o notario, autorizado para dar fe del acto: a estos documentos se les llama también *escrituras públicas. Auténtico,* cuando es expedido o librado por corporación o persona constituída en autoridad o dignidad, o por cualquier otro funcionario público con referencia al ejercicio de sus funciones * * *." Manresa, Ley de Enjuiciamiento Civil, tomo 3, págs. 221 y 222.

El otro error que señala el apelante es haber sostenido la corte inferior que la alegación tercera de la petición que dice: "Que el pariente más inmediato del señor Morales Trigo es el peticionario quien es hijo natural reconocido de dicho causante," constituye una conclusión legal.

Creemos que la corte inferior tuvo razón al considerar dicha alegación como una conclusión legal. El caso de *Sánchez, Ex parte,* 28 D. P. R. 139, que cita la corte inferior, es de aplicación. Deben alegarse en la solicitud los hechos de los cuales surja el derecho del peticionario. Y si bien la prueba trató de cubrir todos los extremos necesarios, pudo ser más clara y robusta en cuanto al hecho de que el peticionario es el único heredero.

Por virtud de todo lo expuesto debe revocarse la sentencia recurrida y devolverse el caso a la corte de distrito de su' origen para ulteriores procedimientos no incompatibles con esta opinión.

*Revocada la resolución apelada y devuelto el caso para ulteriores procedimientos.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf, Aldrey y Hutchison.